1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUSAN F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:22-cv-05661-TL

ORDER AFFIRMING
DENIAL OF BENEFITS

Plaintiff Susan F. seeks review of the denial of her application by Defendant Commissioner of Social Security for Supplemental Security Income ("SSI") under Title XVI. This matter is before the Court on Plaintiff's Complaint for Judicial Review of Social Security Benefits (Dkt. No. 3). Having reviewed Plaintiff's Opening Brief (Dkt. No. 14), Defendant's Response Brief (Dkt. No. 18), Plaintiff's Reply Brief (Dkt. No. 19), and the relevant record, the Court AFFIRMS Defendant's final decision and DISMISSES the matter with prejudice.

## I.    BACKGROUND

Plaintiff is 59 years old, has at least a high school education, and has no past relevant work. Dkt. No. 6-3 at 162. Plaintiff first applied for SSI and Disability Insurance Benefits (DIB) on December 21, 2016, alleging a disability onset date of January 1, 2004. Dkt. No. 6-3 at 20–21, 32–33, 46–47, 67–68. Plaintiff's applications were denied initially and on reconsideration. *Id*. at 30, 42, 87, 112. After the ALJ conducted a hearing on October 2, 2020, the ALJ issued a decision on December 7, 2020, finding Plaintiff not disabled. Dkt. No. 6-2 at 33–56; Dkt. No. 6-3 at 114–138. On August 23, 2021, the Appeals Council vacated the ALJ's December 2020 decision and remanded Plaintiff's case for further proceedings. Dkt. No. 6-3 at 139–43. The ALJ conducted another hearing on February 17, 2022. Dkt. No. 6-2 at 57–88. During that hearing, Plaintiff amended her alleged onset date to December 21, 2016. *Id*. at 66, 69, 85–86. Because Plaintiff's date last insured is March 31, 2006, the change of Plaintiff's alleged onset date resulted in the withdrawal of her DIB application. Dkt. No. 6-2 at 67–69; Dkt. No. 6-3 at 149; 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured in the quarter in which you become disabled or in a later quarter in which you are disabled."). The ALJ issued another decision on April 5, 2022, finding that based on her SSI application, Plaintiff was not disabled from her amended alleged onset date of December 21, 2016, through the date of the ALJ's decision. Dkt. No. 6-3 at 145–76. Plaintiff now seeks review of the ALJ's April 2022 decision.

## II.    LEGAL STANDARD

### A.    Standard of Review

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *see also Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) (applying the standard and reversing ALJ's decision). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and resolving any other ambiguities that might exist. *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Ford*, 950 F.3d at 1154. The Court "must consider the entire record as a whole" and may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted)). Finally, this Court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).

**B.      The "Disabled" Determination**

Under the Social Security Act, a claimant is considered "disabled" if: (1) the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382(c)(a)(3)(A); and (2) "the individual's physical or mental impairment or impairments are of such severity that [the person] is not only unable to do [the person's] previous work but cannot, considering [the person's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 1382(c)(a)(3)(B). *See also Ford*, 950 F.3d at 1148 (citations omitted).

To determine whether a claimant is disabled within the meaning of the Social Security

Act (and, therefore, eligible for benefits), an ALJ follows a five-step sequential evaluation

pursuant to 20 C.F.R. § 404.1520(a): (1) the claimant must not be engaged in "substantial gainful

activity"; (2) the claimant's impairment or combination of impairments must be severe enough to

significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) the

claimant's impairment(s) must meet or equal the criteria of an impairment in the "Listing of

Impairments" ("Listings"); (4) the claimant's residual functional capacity (RFC) is assessed and

the claimant must not be able to perform their "past relevant work"; and (5) the claimant must

not be able to make an adjustment to other work. *See Ford*, 950 F.3d at 1148–49 (same).

If the claimant fails to make the required showing at any of these steps, the ALJ's inquiry

ends, and the claimant is found to not have a disability under the Social Security Act. The burden

of proof is on the claimant at steps one through four but shifts to the agency to prove that "the

claimant can perform a significant number of other jobs in the national economy" at the fifth

step. *Id.* at 1149 (citation omitted).

### III.    DISCUSSION

Plaintiff contends the ALJ erred in evaluating her symptom testimony, specifically about

her mental health.[1] Dkt. No. 14 at 2–4. During the 2020 hearing, Plaintiff testified to having

schizophrenia and experiencing black outs where she is unable to recall what happened. Dkt.

No. 6-2 at 43, 48–49. She also stated she cannot be around large group of people because she has

panic attacks. *Id.* at 46–47. During the 2022 hearing, Plaintiff again testified she is unable to

work because of her mental health. *Id.* at 76.

---

[1] Plaintiff also testified to having symptoms from physical impairments, but because Plaintiff only challenged the ALJ's evaluation of her mental health symptoms in her Opening Brief, the Court does not address the ALJ's evaluation of Plaintiff's physical symptoms. *Carmickle v. Comm'r SSA*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an ALJ's finding because the plaintiff "failed to argue th[e] issue with any specificity in his briefing").

1   Where, as here, an ALJ determines that a claimant has presented objective medical

2   evidence establishing underlying impairments that could cause the symptoms alleged, and there

3   is no evidence of malingering, the ALJ can only discount the claimant's testimony as to

4   symptom severity "by offering specific, clear and convincing reasons for doing so." *Garrison v.*

5   *Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "The standard isn't whether our court is

6   convinced, but instead whether the ALJ's rationale is clear enough that it has the power to

7   convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

8   In this case, the ALJ primarily rejected Plaintiff's testimony because her medical record

9   indicated improvement in her symptoms with medication and treatment. Dkt. No. 6-3 at 158–60.

10  The ALJ's assessment of the record is supported by substantial evidence.

11  Plaintiff was admitted for in-patient treatment on several occasions throughout the

12  relevant period. Dkt. No. 6-7. at 532–35; Dkt. No. 6-8 at 75–80; Dkt. No. 6-10 at 622. Plaintiff's

13  mental status examination upon admittance in July 2017 shows she was uncooperative, laughed

14  at inappropriate times, had disorganized thought process, poor insight about her symptoms, and

15  was unwilling to participate in a treatment plan. Dkt. No. 6-7 at 533–34. Her progress notes show

16  she continued to have poor understanding about her mental health, disorganized thought process,

17  and poor decision making. *Id*. at 539, 544, 550. However, when she was discharged later that

18  month, she was observed to have "improved with inpatient treatment" and her "symptoms were

19  attenuated to the point of stabilization." *Id*. at 536.

20  Plaintiff's physical examinations thereafter show she was alert and oriented with normal

21  coordination, mood, affect, and behavior. Dkt. No. 6-7 at 678, 681; Dkt. No. 6-8 at 999, 1004,

22  1007. Plaintiff also began attending counseling sessions in July 2019. Dkt. No. 6-7 at 612. She

23  missed several sessions after her initial intake, but by August 2019, she reported she was able to

1    enroll in a computer class in a community college, she had taken a career readiness course, she

2    was excited about the possibility of getting her license reinstated, and she was actively pursuing

3    employment. Dkt. No. 6-7 at 621, 624. Plaintiff also reported she was working at Goodwill two

4    days a week and was focusing on attaining housing. *Id*. at 654, 659. Plaintiff's physical

5    examinations in November 2019 again showed she was alert, cooperative, oriented, not

6    depressed, though she was also observed as unkempt. Dkt. No. 6-8 at 990, 993–94.

7         Plaintiff attended in-patient treatment again from March 2020 to April 2020, from

8    October 2020 to November 2020, and from December 2020 to January 2021. *Id*. at 75; Dkt. No.

9    6-9 at 4; Dkt. No. 6-10 at 622. Progress notes from her March 2020 and October 2020 treatment

10   sessions indicate Plaintiff was stable or at least progressing towards stabilization with

11   medication. *See, e.g.*, Dkt. No. 6-8 at 700 ("[Plaintiff's] mood and psychosis will stabilize as

12   evidenced by daily adherence to medication . . . ."); Dkt. No. 6-9 at 272–76 (stating Plaintiff was

13   treated with medication and therapy, and that at the time of discharge, Plaintiff was stable with

14   no delusions, impulsive thoughts, depressive, symptoms, or anxiety). Plaintiff's discharge notes

15   in November 2020 show she was capable of completing activities of daily living and she was

16   recommended to continue her medication. Dkt. No. 6-9 at 274–76. After Plaintiff was discharged

17   in January 2021, Plaintiff continued to attend counseling sessions and was noted as making

18   progress based on Plaintiff's initiative, responsiveness, and receptiveness. Dkt. No. 6-8 at 964–

19   65, 972; Dkt. No. 6-10 at 622. In April 2021, Plaintiff was observed as slightly more agitated

20   with "extremely limited insight," but she also refused medication at the time. Dkt. No. 6-10 at

21   622. Subsequent progress notes state Plaintiff denied hallucinations and that Plaintiff's

22   symptoms improved with adherence to medication. *Id*. at 600, 623 ("The [patient] appears to be

23   relatively psychiatrically stable with increasing functioning…"), 658. By September 2021,

1   Plaintiff reported her mood as "good," she continued denying any hallucinations, and she was

2   taking medicine as prescribed. *Id*. at 622. She admitted she did not like taking her medicine, but

3   she was aware it was necessary if she did not want another "episode." *Id*.

4        "Impairments that can be controlled effectively with medication are not disabling for the

5   purpose of determining eligibility for [social security disability] benefits." *Warre ex rel. E.T. IV*

6   *v. Comm'r, SSA.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Given that the record shows Plaintiff's

7   mental health symptoms were generally controlled with medication and treatment, the ALJ,

8   therefore, could reasonably reject Plaintiff's symptom testimony.

9        The ALJ also noted that while attending counseling sessions, Plaintiff's living situation

10  improved. Dkt. No. 6-3 at 159. She moved to a new apartment, spent time with friends, shopped

11  for her own groceries, and joined a gym. *See* Dkt. No. 6-10 at 621, 629–33, 637–39. An ALJ

12  may reject a plaintiff's symptom testimony based on her daily activities if they contradict her

13  testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597,

14  603 (9th Cir. 1989)). Plaintiff's ability to partake in these activities directly contradicts her

15  statements about her difficulties being around other people. Further undercutting Plaintiff's

16  allegations are her own statements from the 2022 hearing, where she testified about her

17  improvement from medication and weekly counseling sessions, as well as her ability to spend

18  time with friends and family and run errands by taking the bus. Dkt. No. 6-2 at 76–82. She also

19  testified she has not returned to in-patient treatment since she was discharged in January 2021.

20  *Id*. at 82–83.

21       The ALJ also rejected Plaintiff's symptom testimony because Plaintiff expressed

22  reluctance to apply for jobs because of her criminal record. Dkt. No. 6-3 at 159. A claimant's

23  statement that his or her impairment is not the reason they are unable to work undermines a

claimant's argument for disability. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ's two citations in support of this reasoning are not entirely convincing, as the first record shows Plaintiff was more so apprehensive about attending school rather than working, though the second does state Plaintiff lacked interest in working. Dkt. No. 6-3 at 159; Dkt. No. 6-10 at 635, 643. Because the ALJ's reasoning here is not supported by substantial evidence, the Court cannot say the ALJ permissibly rejected Plaintiff's testimony based on this reason. However, because the ALJ has provided at least one valid reason to reject Plaintiff's testimony that is supported by substantial evidence, even if the ALJ's additional reasoning is erroneous, the error would be deemed harmless. *See Carmickle*, 533 F.3d at 1162 (holding that the inclusion of an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination where an ALJ provides other reasons that are supported by substantial evidence).

While Plaintiff concedes that her record demonstrates improvement after December 2020, she argues that she "would have been unable to sustain employment prior to those dates." Dkt. No. 14 at 3. But the relevant period for this case is not limited to only before December 2020, and the ALJ's interpretation of Plaintiff's record from her alleged amended onset date of December 21, 2016, through the date of the ALJ's decision is supported by the record showing Plaintiff's symptoms were managed (and, therefore, manageable at an earlier date) with her compliance with medication and treatment. *Warre ex rel. E.T. IV.*, 439 F.3d at 1006.

Plaintiff also argues the Commissioner's citation to the record is "selective" and cites to treatment notes showing Plaintiff was often found anxious, depressed, or both. Dkt. No. 19 at 2. But most of the evidence cited by Plaintiff are from her in-patient treatment sessions when was not consistent with her medication. *See* Dkt. No. 6-9 at 18, 21, 32, 35, 37, 91, 117, 125, 134,

1  142–43, 148, 156.

2  "[W]hen the evidence is susceptible to more than one rational interpretation, [the Court]

3  must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

4  record." *Molina*, 674 F.3d at 1111. The ALJ's interpretation of Plaintiff's overall record is a

5  rational one and supported by the record, thus, the Court finds the ALJ did not err in rejecting

6  Plaintiff's testimony.

7  **IV.   CONCLUSION**

8  Accordingly, the Commissioner's final decision is AFFIRMED and this case is DISMISSED

9  with prejudice.

10  DATED this 24th day of July, 2023.

11

12

13  Tana Lin
United States District Judge

14

15

16

17

18

19

20

21

22

23